RECEIVED
IN LAKE CHARLES, LA
MAR 21 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GERALD DIAL** | : | **DOCKET NO. 2:09-1699** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **STATE FARM FIRE & CASUALTY COMPANY, ET AL** | : | **MAGISTRATE JUDGE KAY** |

### TRIAL OPINION

The trial of this matter was held on February 13 and 14, 2012. The parties have submitted their post trial briefs as requested by the undersigned and the matter is ripe for decision. On December 21, 2008, plaintiff's home was destroyed by fire. There is and has been no dispute that the cause of the fire was arson. The home was covered under a State Farm Fire and Casualty Insurance Company policy which provided coverage for the dwelling,[1] dwelling extensions[2] and personal property.[3] The only issue before the court is State Farm's arson defense as to plaintiff, Gerald Dial's claims.

### BURDEN OF PROOF

By raising the affirmative defense of arson, the insurer has the burden of establishing, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it.[4] An

---

[1] $282,200.

[2] $ 68,100.

[3] $211,650.

[4] Sumrall v. Providence Washington Ins. Co. 221 La. 633, 60 So.2d 68 (1952)

insurer need not prove its case beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense.[5] [A] finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire. . . ."[6]

## FACTUAL FINDINGS

The parties agree that the fire which destroyed Mr. Dial's home in December 2008 was of an incendiary origin, and/or was caused by arson. Four days before the fire, Mr. Dial and his girlfriend, Blue James, were involved in an altercation which resulted in him facing felony criminal charges. Shortly thereafter, one of Ms. James' brothers called Mr. Dial and threatened him with bodily harm. Because of the threat, Mr. Dial took precautions, such as locking the gate used to enter his driveway from Highway 27 in DeRidder, Louisiana. On Sunday evening, the day of the fire, in response to Mr. Dial's complaint about Blue taking items from his house earlier in the week, Deputy Maddox visited the Dial home until approximately 8:00 p.m. When Deputy Maddox arrived, the gate was locked, but Mr. Dial told him not to lock the gate when he left.

Later in the evening, Mr. Dial was in his upstairs bedroom watching television when he claims he heard a truck driving on his driveway; he then claims he heard a truck start which caused him to grab his cell phone and his hand gun and go downstairs to investigate. While still inside and traveling down the stairs, Mr. Dial claims he heard a "whoosh," smelled gasoline and then saw through a window a fire on the southeast corner of the house. Mr. Dial testified that he placed his

---

[5] Rist v. Commercial Union Ins.Co. 376 So.2d 113 (La.1979) citing Sumrall v. Providence Washington Ins. Co. 221 La. 633, 60 So.2d 68 (1952).

[6] Sumrall, 221 La. 633, 60 So.2d 68 (1952).

2

gun on the kitchen cabinet and proceeded to go outside through a door on the north side of the house.

When he went outside, Mr. Dial claims he saw a truck exiting his driveway and turning south on Highway 27. Mr. Dial's neighbors, Don and Faye Corkern also testified that they heard a truck which they thought was in their own driveway; they both testified that the truck continued to run or idle, as opposed to Mr. Dial's testimony that the truck was turned off and later turned on. The Corkerns' house is at least 300 to 400 yards from Mr. Dial's home. The court notes that there were numerous inconsistencies with regard to the Corkern's testimony of the events that took place the night of the fire, Mr. Corkern's written statement immediately after the fire, and what Mr. Dial testified to at trial and in his deposition, such as the truck running, where they thought the truck was traveling, Mr. Dial's number of entrances into the house, Mr. Dial's lack of helping to save items, Mr. Dial's attire and demeanor, etc. Of significance to this court is the fact that Mr. Corkern's statement taken the morning after the fire does not reveal anything about hearing a truck at all the night of the fire. Furthermore, we do not find it plausible that either of the Corkern's could hear a truck idling from inside their house, given the distance between Mr. Dial's driveway and the Corkern home.

Even though Mr. Dial claims he was concerned about the threat of bodily injury by one of the James' brothers, the court finds it incredible that Mr. Dial chose to place the gun on the cabinet before going outside to investigate. Mr. Dial also testified that he could not go back into his house because the door self-locked. Mr. Dial made no attempts to put out the fire even though there was a swimming pool full of water nearby.

Mr. Dial testified that he immediately attempted to call the fire department via dialing 911, but inadvertently repeatedly called 411 instead, thus delaying his attempts. The phone records do

3

not reveal that a 411 number was called; Mr. Dial destroyed the cell phone on the night of the fire. Mr. Dial testified that the dispatcher asked him to stay on the phone for directions, but the dispatch tape does not reveal this request.

Mr. Corkern was the first to arrive at Dial's home; Mr. And Mrs. Corkern were in bed when they were alerted by their dogs barking. Mr. Corkern went outside to investigate, came back inside and told Mrs. Corkern about the fire, changed clothes, put on shoes and drove to the Dial home. When he arrived, he testified that Mr. Dial was on his cell phone with 911 outside of the house. He was not attempting to put out the fire or save any items from the fire.

When Mr. Dial contacted the dispatcher, his first words were that there was a truck leaving his driveway; he then reported the fire. The fire department was in close proximity to Mr. Dial's home and arrived within 5 to 7 minutes after being alerted. The fire had burned to the point that the fire department was unable to save the home.

Mr. Dial's personal vehicles were parked some distance from the driveway and away from the house and the concrete driveway. There was trial testimony that it was not unusual to see the vehicles parked at the edge of the concrete driveway, but not where the vehicles were parked on the night of the fire.

In 2007 when Mr. Dial was facing significant financial difficulties, he attempted, albeit unsuccessfully, to burn his house down by placing blankets around electric heaters and leaving for Baton Rouge to work. During his examination under oath by State Farm, Mr. Dial lied about this past attempt to burn his house down.

Mr. Dial testified that in 2008, he again was facing financial difficulties. Even though he had

just signed two significant contracts for 2009, Mr. Dial's tax returns[7] reveal that he was making very little profit, and he repeatedly complained that the bank, who had an interest in all payments made by Mr. Dial's payors, never left him enough money to operate his business and/or for personal expenses. Mr. Fusilier, with First National Bank in DeRidder, testified that the vast majority of the payments went to pay down Mr. Dial's existing loans. Even though Mr. Fusilier testified that Mr. Dial was current on his payments to the bank, Mr. Fusilier was not aware of the fact that Mr. Dial was in arrears for child support payments[8] and community property obligations. Mr. Fusilier was also not aware of a $7,000 tax lien obligation and that Mr. Dial was also supporting his girlfriend, Ms. James and their child. There was also testimony from Chief John Gott,[9] Mr. Corkern, Stacy Dowden and Buddy Maddox about Mr. Dial's financial difficulties; these witness's knowledge and/or perception of Mr. Dial's financial difficulties came from their relationships and conversations with Mr. Dial.

Mr. Fusilier testified that after receiving payment from State Farm, it was forced to foreclose on Mr. Dial's property to satisfy the remaining debt owed to the bank. In addition to the debts to the bank being paid through the insurance proceeds, Mr. Dial's policy provided contents coverage

---

[7] Mr. Dial's company is a Limited Liability Company and income or loss from this type of entity is reported on Mr. Dial's individual tax return. Mr. Dial's tax return shows that his income was substantially less than what was required to meet his obligations.

[8] Stacey Dowden, Mr. Dial's ex-wife, testified that in July 2009, she filed suit for $71,500 in arrears for child support payments, and that Mr. Dial also owed her an unknown amount for community property payment obligations.

[9] Chief Gott testified that shortly before the fire, Mr. Dial told him that he hated his house. It is noted that Chief Gott was a friend of Mr. Dial's, and Gott's wife, a realtor had previously listed the house for sale.

5

in the amount of $211,650.[10] While the court, because of the bifurcation, did not hear or view evidence to support Mr. Dial's claim for the full amount of the coverage, it is difficult to believe that moveables situated in the house and destroyed would be valued that high. Regardless, Mr. Dial has that much coverage and is pursuing State Farm for that amount, and this is an additional incentive for his either burning his house down or having it done.

Mr. Dial attempted to place suspicion on Blue James's three brothers. After being interviewed and investigated by the DeRidder Police Department on the night of the fire, the Jameses were not considered to be persons of interest with regard to the fire. All three brothers testified at trial. The court found the James brothers' testimony to be credible. It is noted that all three brothers maintained steady employment and there was no evidence of any prior criminal activity on the part of any of them. At the trial, when Mr. Dial was asked to suggest anyone who might have set his house afire, he could suggest only the James boys because of his altercation with Blue. If the James boys, one or more, burned down Mr. Dial's home, that would seem to be more than adequate retribution for Mr. Dial's conduct toward their sister. However, evidence shows that about two months after the fire, Blake James saw Mr. Dial at a service station and instigated a physical altercation with him.

Finally, the trial testimony revealed that Mr. Dial had used both cocaine and methamphetamines some time prior to and/or around the time of the fire. However, during his deposition, Mr. Dial denied any use of illegal or illicit drugs.

## CONCLUSION

The undersigned finds that Mr. Dial was not a credible witness and he was motivated by

---

[10] Defense exhibit D-1.

6

financial difficulties to burn his house down for financial gain. It was proven that Mr. Dial had made a prior attempt to burn the house down because of financial difficulties. Based on the facts of this case, I find that State Farm has established by a clear preponderance of the evidence that the fire in question was of incendiary origin and that Mr. Dial was responsible for it. Accordingly, judgment will be rendered in favor of defendant, State Farm Fire and Casualty Insurance Company, and against plaintiff, Gerald Dial, dismissing with prejudice all claims at plaintiff's costs.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 21st day of March, 2012.

JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE